UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SUKHWINDER SINGH,

                                Plaintiff,                           15-cv-5541 (PKC)

           -against-                                  MEMORANDUM
                                                              <u>AND ORDER</u>

BOARD OF IMMIGRATION APPEALS and
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                             Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Federal immigration law permits a United States citizen to file a petition for

permanent resident status on behalf an alien spouse.  The petitioner must show that the couple

intended to establish a life together at the time they entered into marriage.  If immigration

authorities find that the marriage was a sham intended to evade the immigration laws, the alien

spouse is thereafter barred from receiving a marriage-based adjustment to immigration status.

          Plaintiff Sukhwinder Singh brings this action pursuant to the Administrative

Procedure Act, 5 U.S.C. § 701, <u>et seq.</u>  Her husband, Balbir Singh, previously was married to a

woman named Doris McWilliams, whom he met and married in July 1984, within one month of

his arrival to the United States.  In 1987, immigration authorities concluded that Singh and

McWilliams entered into a sham marriage, and denied a petition that McWilliams filed on Balbir

Singh's behalf.  McWilliams and Balbir Singh divorced in 1991.  In 1992, Balbir Singh married

plaintiff Sukhwinder Singh.  Since that time, Sukhwinder Singh has filed petitions to the United

States Citizenship and Immigration Services ("USCIS") for an adjustment to Balbir Singh's

immigration status.  Based on the earlier finding that Balbir Singh's marriage to McWilliams

was a fraudulent attempt to evade the immigration laws, those petitions have been denied.

      Plaintiff Sukhwinder Singh seeks to vacate and remand a decision of the USCIS,

subsequently affirmed by the Board of Immigration Appeals ("BIA"), that denied a petition for

lawful permanent resident status that she filed on behalf of Balbir Singh.  The BIA and USCIS

have moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P., and plaintiff

Sukhwinder Singh has filed a cross-motion for summary judgment.  There are no disputed issues

of fact.

      Because the decisions of the USCIS and the BIA were not arbitrary and

capricious, and were supported by substantial evidence, the defendants' motion for summary

judgment is granted and the plaintiff's motion is denied.

BACKGROUND.

      For the purposes of the parties' respective motions, the following facts are

undisputed.[1]

      A.  The INS's Conclusion that Balbir Singh's Marriage to Doris McWilliams Was
         a Sham Marriage.

      In July 1984, Balbir Singh, a native and citizen of India, arrived to the United

States and, within a month, married Doris McWilliams, a United States citizen.  (Record 253,

483.)  The Court will refer to Balbir Singh as "Singh," Doris McWilliams by her maiden name

"McWilliams," and plaintiff Sukhwinder Singh by her first name, "Sukhwinder."

---

[1] No party has submitted a statement of undisputed facts required by Local Civil Rule 56.1.  Defendants BIA and USCIS have submitted the administrative record, and plaintiff Sukhwinder Singh has made no evidentiary submissions.  Because this case turns entirely on the administrative record, and the parties have not raised any factual disputes, their failure to file a Rule 56.1 statement does not impede the adjudication of the summary judgment motions.

On August 8, 1984, McWilliams filed a "Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa" under Form I-130 issued by what was then called the Immigration and Naturalization Service (the "INS").  (Id. 541.)  The petition identified Singh as McWilliams's husband and the beneficiary of the petition.  (Id.)  The petition annexed McWilliams's birth certificate; a marriage certificate of Singh and McWilliams dated July 31, 1984; a photograph of Singh and McWilliams locked in an embrace; and individual headshots of Singh and McWilliams.  (Id. 543-48.)  While adjudication of the 1984 petition was pending, McWilliams filed renewed petitions on January 17, 1986 (id. 524) and July 24, 1986 (id. 481), and annexed additional materials, including copies of leases for an apartment in Brighton Beach; a realtor's note addressed to both Singh and McWilliams; employment-related materials for McWilliams and Singh; correspondence that the IRS and a telephone provider sent to McWilliams at the Brighton Beach address; and documents related to Singh including copies of his passport, birth certificate, an affidavit from his father, and a "character certificate" issued by police in India.  (Id. 489, 492-93, 491, 484, 487, 502, 511, 526, 546, 490, 508-09, 495-500, 504-07.)

On July 2, 1987, an INS officer interviewed Singh and McWilliams, an 88-page transcript of which is included in the record.  (Id. 376-463.)  Some of the answers provided by Singh and McWilliams included inconsistent details.  Singh stated that he and McWilliams met on a beach at the end of July 1984, decided to marry the next day, and were married two or three days later, whereas McWilliams stated that they met on a beach in early July and married at the end of the month.  (Id. 422-28, 384-86, 453-54.)  They gave conflicting answers concerning certain details of the wedding.  McWilliams stated that she and a friend named Barbara, whose last name she could not recall, took a subway to the Borough Hall station in Brooklyn, where

they met Singh, and that after the ceremony, she, Barbara and Singh went out to eat.  (Record 391-92.)  Singh stated that he met Barbara and McWilliams on Court Street in Brooklyn, and that after the wedding ceremony, their meal included a fourth person, Anthony Robinson.  (Id. 432-38.)

When asked about members of Singh's family, McWilliams stated that Singh's father "just passed away, February."  (Id. 390.)  But Singh testified that his father had died in December 1985 with the news reaching him in February 1986, a year earlier than McWilliams testified.  (Id. 455-56.)

Concerning McWilliams's employment, Singh stated that McWilliams worked at a post office from July 1985 to September 1985.  (Id. 401-02, 446.)  McWilliams stated that she also worked as a file clerk from March 1985 to July 1985, and Singh stated that she had stayed home while they lived off her savings and borrowed money.  (Id. 402-03, 447-49, 457-58.)

Following the interview, the INS further investigated the marriage of Singh and McWilliams.  A July 15, 1987 memo written by the interviewer stated that "[m]any answers agreed, possibly the result of prior rehearsal.  However, the profile of the case, the account of their meeting and marriage, and the discrepancies in answers to some basic questions make their relationship questionable."  (Id. 364.)  The memo noted the above-summarized inconsistencies in the interview, and recommended that "an investigation [be] conducted into the bona fides of this marriage so that final adjudication of the petition may be made as soon as possible . . . ."  (Id. 365.)

On July 29, 1987, an INS investigator interviewed Frank Robinson, superintendent of a building located at 521 West 151st Street in Manhattan.  (Id. 357, 361.)  Robinson stated that he was the father of Anthony Robinson, and that his son had lived for at

least three years in apartment 33 with McWilliams, whom he described as Anthony Robinson's common-law wife.  (Id. 357, 361.)  Robinson identified a picture of McWilliams, and stated that he was unfamiliar with Singh, or with McWilliams's relationship with Singh.  (Id. 361.)  The investigator then spoke to Cassandra Littlejohn, who resided across the hall of Anthony Robinson and had lived at the apartment for approximately five years.  (Id. 360.)  She confirmed that Frank Robinson was the father of Anthony Robinson, identified McWilliams by photograph and stated that McWilliams and Anthony Robinson had lived together "for about 3 years."  (Id.)  The interview notes state, "She sees her going in and out of this apartment."  (Id.)

On September 16, 1987, the INS sent McWilliams written notification that it intended to deny her petition on behalf of Singh, on the basis that "the marriage between you and the beneficiary was contracted solely to obtain immigration benefits for the beneficiary and to circumvent the immigration laws."  (Id. 351.)  The notification stated that "it appears . . . that you and the beneficiary are not residing in a bona fide marital relationship and that false and misleading statements were given under oath."  (Id.)  It recited factual inconsistencies in the answers given by Singh and McWilliams, and the statements given by the residents of 521 West 151st Street concerning McWilliams's relationship with Anthony Robinson.  (Id. 350-51.)

McWilliams responded by letter, stating that the interviewer misunderstood Singh's answers due to his poor English.  (Id. 347-49.)  She stated that Anthony Robinson was a close friend who she called "my brother," and that statements describing them as romantically involved were "scurrilous, a slander and untrue."  (Id.)

On December 30, 1987, the INS denied the form I-130 visa application filed by McWilliams on behalf of Singh.  (Id. 326-29.)  Among other things, it stated: "It is concluded that the marriage between petitioner and beneficiary was contracted solely to obtain immigration

benefits for the beneficiary and to circumvent the immigration laws.  Petitioner has failed to establish the relationship claimed through clear, convincing and unequivocal evidence as required in visa petition matters."  (<u>Id.</u> 329.)  McWilliams and Singh then filed a notice of appeal to the Board of Immigration Appeals, and there is no indication that they took further action.  (<u>Id.</u> 320-21.)

In May 1991, McWilliams and Singh divorced.  (<u>Id.</u> 318-19.)

B.  <u>Singh's Subsequent Marriage and Form 1-130 Applications.</u>

Balbir Singh married plaintiff Sukhwinder Singh on February 6, 1992.  (<u>Id.</u> 317.) On February 12, 1992, plaintiff Sukhwinder Singh, who was then a lawful permanent resident, filed a Form I-130 application on behalf of Balbir Singh, and the INS approved the petition on May 13, 1992.  (<u>Id.</u> 314.)  The INS revoked its approval on October 29, 1998, on the basis of its prior finding that Singh and McWilliams had entered into a sham marriage.  (<u>Id.</u> 299-300.)

On August 23, 2004, Sukhwinder filed another I-130 application on behalf of Balbir Singh.  (<u>Id.</u> 236-37.)  By that time, Sukhwinder had become a U.S. citizen.  (<u>Id.</u> 246.)  On September 26, 2006, the USCIS denied the application, explaining that the previous finding of Singh's sham marriage to McWilliams precluded approval.  (<u>Id.</u> 209-10.)  Sukhwinder appealed the denial, and the BIA remanded the case, with the direction that the USCIS must make an independent determination as to Singh's prior application, stating that the USCIS "should not give conclusive effect to determinations made in prior proceedings."  (<u>Id.</u> 179.)

On May 10, 2010, the USCIS issued a nine-page, single-spaced, written decision giving notice of its intent to deny the I-130 application.  (<u>Id.</u> 144-52.)  Sukhwinder made additional submissions in support of the application, and on November 26, 2012, the USCIS issued a 14-page, single-spaced, written decision that denied the application.  (<u>Id.</u> 67-80.)  It

reviewed and summarized the evidence as to the application that McWilliams made on Sigh's

behalf, as well as newer evidence submitted by Sukhwinder, including four unsworn affidavits

submitted by Singh's friends that described their observations as to the Singh/McWilliams

marriage.  (Id.)  The USCIS concluded that the application was barred pursuant to 8 U.S.C. §

1154(c) (Record 80), which states in part that "no petition" for an adjustment to immigration

status "shall be approved" if the beneficiary had entered into a previous marriage "for the

purpose of evading the immigration laws . . . ."

   Singh appealed to the BIA, which affirmed the decision of the USCIS in a written

decision of May 1, 2015.  (Id. 2-5.)  The BIA conducted a de novo review of the administrative

record, and concluded that Sukhwinder's submissions did not satisfy her burden to prove that

Singh's marriage to McWilliams was not a sham, including the absence of credible observations

from friends and family members regarding their marital relationship.  (Id. at 2-3.)  It also

reviewed the inconsistencies in the statements of McWilliams and Singh during the 1987

interview, as well as the investigative findings concerning McWilliams's co-habitation with

Anthony Robinson during the time that she was purportedly living with Singh.  (Id. at 2.)

SUMMARY JUDGMENT STANDARD AND THE ADMINISTRATIVE PROCEDURE ACT.

   Summary judgment "shall" be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit

under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On

a motion for summary judgment, the court must "construe the facts in the light most favorable to

the non-moving party and resolve all ambiguities and draw all reasonable inferences against the

movant."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks

omitted).  It is the initial burden of the movant to come forward with evidence on each material element of the claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

Plaintiff seeks relief under the Administrative Procedure Act (the "APA").  "Under 5 U.S.C. § 706(2)(A) a reviewing court must hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Karpova v. Snow, 497 F.3d 262, 267 (2d Cir. 2007).  This standard is "narrow," and "courts should not substitute their judgment for that of the agency."  Id.  "'Appropriate deference must be accorded [the INS's] decisions' in light of the widespread fraud associated with immediate-relative petitions."  Egan v. Weiss, 119 F.3d 106, 107 (2d Cir. 1997) (quoting INS v. Miranda, 459 U.S. 14, 18-19 & n. 4 (1982) (per curiam)).  "[A]n agency determination will only be overturned when the agency 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Karpova, 497

F.3d at 267-68 (quoting <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.</u> <u>Co.</u>, 463 U.S. 29, 43 (1983)).

SUBJECT MATTER JURISDICTION AND VENUE.

   Judicial review of an agency's immigration decisions is circumscribed by 8 U.S.C. § 1252(a)(2)(B), which deprives courts of the jurisdiction to review certain specified statutory relief, as well as actions left to the discretion of the Attorney General or the Secretary of Homeland Security.

   Sukhwinder petitioned the USCIS to revise her husband's immigration classification pursuant to 8 U.S.C. § 1154(A)(1)(A)(i).  In <u>Ruiz v. Mukasey</u>, 552 F.3d 269, 274-76 (2d Cir. 2009), the Second Circuit concluded that, with limited exceptions not relevant here, review of petitions brought under that statute do not fall within the prohibitions of section 1252(a)(2)(B), and do not implicate the discretion of the Attorney General.  This Court therefore has subject matter jurisdiction over plaintiff's claims.

   Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(e)(1)(B), which provides that "[a] civil action in which a defendant is . . . an agency of the United States . . . may, except as otherwise provided by law, be brought in any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred . . . ."  In an Order of December 2, 2016, this Court noted that plaintiffs reside in Michigan and bring claims related to the USCIS's administrative actions in Michigan, which were reviewed by the BIA in Virginia. (Docket # 31.)  The Court directed the parties to show cause in writing as to why this action should not be transferred to the Eastern District of Michigan.  (Docket # 31.)  Although the claim is brought by a Michigan plaintiff and arises from events in Michigan, which weigh in favor of transfer, it is also the case that plaintiff elected to bring this action in this District, defendants do

not oppose venue in this District, underlying facts concerning the marriage of Singh and McWilliams occurred in this District and no party is inconvenienced by litigating in this forum because the dispute turns entirely on the administrative record.  (See Docket # 33.)  The Court therefore concludes that venue is proper in this District.  See generally Pearson v. Rodriguez, 174 F. Supp. 3d 210 (D.D.C. 2016) (weighing venue considerations for claims challenging USCIS decision).

DISCUSSION

Under the INA, "no petition" for an adjustment to immigration status "shall be approved if . . .  (1) the alien has previously . . . has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws . . . ."  8 U.S.C. § 1154(c).  This provision acts as a "marriage-fraud bar" against a petitioner seeking preferential immigration status.  Bourisquot v. Holder, 569 Fed. App'x 35, 36 (2d Cir. 2014) (summary order); see also Koffi v. Holder, 487 Fed. App'x 658, 659 (2d Cir. 2012) ("A Form I-130 petition for an immediate relative must be denied if there is 'substantial and probative evidence' of conspiracy to enter into a marriage, including previous marriages, 'for the purpose of evading the immigration laws.'").

The petitioner has the burden of proving the beneficiary's eligibility, "and must therefore rebut any evidence of marriage fraud 'in the alien's file' with proof that the prior marriage was bona fide, i.e., not fraudulent."  Bourisquot, 569 Fed. App'x at 36.  In deciding whether a marriage was fraudulent, the inquiry centers on whether the couple "intend[ed] to establish a life together at the time they were married . . . ."  Matter of Mckee, 17 I. & N. Dec.

- 10 -

332, 334 (BIA 1980); see also Vazquez v. U.S. I.N.S. at N.Y., 1990 WL 156158, at *7 (E.D.N.Y.

Sept. 28, 1990) (Spatt, J.).  "The petitioner should submit documents which cover the period of

the prior marriage," including documentation showing joint property ownership or common

residence, commingling of financial resources or sworn affidavits from third parties with

personal knowledge of the marriage's bona fides.  8 C.F.R. § 204.2(a)(1)(i)(B).  "The petitioner

must establish by clear and convincing evidence that the prior marriage was not entered into for

the purpose of evading the immigration laws.  Failure to meet the 'clear and convincing

evidence' standard will result in the denial of the petition."  8 C.F.R. § 204.2(a)(I)(i)(C).

The conclusions of the USCIS and BIA will be upheld if they are supported by

substantial evidence.  8 C.F.R. § 204.2(a)(1)(ii) ("The director will deny a petition for immigrant

visa classification filed on behalf of any alien for whom there is substantial and probative

evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit

through the attempt or conspiracy.").  "'Substantial evidence means more than a mere scintilla.

It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  Koffi, 487 Fed. App'x at 659 (quoting Burgess v. Astrue, 537 F.3d 117, 127 (2d

Cir. 2008)).

This Court concludes that there is substantial evidence to support the conclusion

that Singh's marriage to McWilliams was fraudulent, as found by the USCIS in 2012 and

affirmed by the BIA in 2015.  The USCIS conducted an "independent investigation" into the

record of Singh's marriage to McWilliams, which focused on the documentation of their

courtship and marriage, interview discrepancies and evidence of extramarital relationships.

(Record 52-65.)  It concluded that the totality of the record, including the lack of documentary

evidence and "pervasive discrepancies," established that the marriage of Singh and McWilliams

"was not entered into to a share a life together, but was instead a scheme to obtain an immigration benefit." (Id. 65.)

As to documentation into the bona fides of Singh's marriage of McWilliams, the USCIS concluded that "the bulk of the documentation" consisted of identification documents, which had "no relevance" to determining the marriage's validity. (Id. 59.) There was "no evidence" of joint finances, shared resources or shared experiences except for a photo of the two hugging. (Id.) Tax records and utility bills "are all in only one of their names." (Id.) The USCIS afforded little weight to a lease renewal signed only by Singh, with McWilliams's name handwritten into an otherwise-typed document. (Id.) Taken together, the documents did not present clear and convincing evidence that Singh and McWilliams entered into a shared life together. (Id.) In addition, the USCIS found that their answers in the July 1987 interview mainly reflected knowledge of basic information concerning matters that they were "easily able to memorize . . . ." (Id.)

The USCIS reviewed additional discrepancies in the July 1987 interview. Singh and McWilliams gave conflicting testimony about their meeting and courtship, with Singh testifying that McWilliams suggested marriage a day after they met on a beach and McWilliams testifying that the two dated for a little less than a month before deciding to marry. (Id. 60.) The USCIS concluded that this was "a fabricated story" because the two were unable to explain their "extremely different" accounts. (Id.) Similarly, McWilliams testified that a woman identified as "Barbara" was the witness to their wedding ceremony, but Gurdev Singh was listed as witness on their marriage license, and no one named Barbara was mentioned on any marriage document. (Id. 60-61.) The USCIS found that McWilliams gave inconsistent testimony about her knowledge of Singh's relatives, once stating that "they are of no interest to me." (Id. 61.) Singh

also was unaware of aspects of McWilliams's employment history during their marriage, and

McWilliams testified that she "did not tell him" about a job she took as a file clerk. (<u>Id.</u> 61-62.)

In support of the Form I-130 application, Sukhwinder argued that Singh's comprehension of

English was poor at the time of the 1987 interview, but Singh confirmed his understanding of

English at the interview's start, and displayed confusion at the questions only "a handful of times

. . . ." (<u>Id.</u> 62.)

       The USCIS also credited statements made by individuals at 521 West 151st Street

concerning McWilliams's relationship to Anthony Robinson. (<u>Id.</u> 64.) The USCIS concluded

that McWilliams and Robinson "were holding themselves out as a married couple," and that

Robinson had been involved in aspects of Singh and McWilliams's wedding ceremony,

including the purchase of the rings." (<u>Id.</u>) The USCIS concluded that Singh, McWilliams and

Robinson "[c]learly . . . were engaged in a marital scheme, to make it appear as if she were in a

valid marriage with the beneficiary to enable him to gain status as the spouse of a United States

citizen." (<u>Id.</u>) It concluded that Sukhwinder had been made aware of the evidence concerning

Anthony Robinson's relationship to McWilliams but that Sukhwinder failed to come forward

with relevant or probative rebuttal evidence. (<u>Id.</u>)

       The USCIS found the rebuttal evidence submitted by Sukhwinder to be

unpersuasive. (<u>Id.</u> 63.) It rejected Sukhwinder's argument that credibility of a petitioner or

beneficiary should not be considered in establishing evidence of marriage fraud, noting that

"fabricated" or "discrepant" testimony indicates that the couple did "not have the same

knowledge of a claimed shared state of living." (<u>Id.</u>) If an officer concludes that a couple has

misrepresented itself "once or twice during testimony," that may be weighed as to the

believability of the testimony overall. (<u>Id.</u>) Sukhwinder also contended that McWilliams

suffered from a faulty memory, but the USCIS concluded that even memory gaps could not explain the "substantial and probative evidence" of falsehoods and conflicting statements. (Id.)

The BIA conducted a de novo review and affirmed the findings and conclusions of the USCIS. (Id. 1-5.) It concluded that Sukhwinder had not provided convincing evidence of the bona fides of Singh's marriage to McWilliams, and that the USCIS properly weighed the evidence of courtship, residency history, knowledge of one another's lives, and absence of evidence concerning joint finances and shared experiences. (Id. 3.) The BIA also concluded that the USCIS properly considered the evidence concerning McWilliams's relationship to Anthony Robinson. (Id.) It concluded that Sukhwinder did not submit persuasive documentary or testimonial evidence to address the inconsistencies and offered "no reliable evidence" on key factors about Singh and McWilliams's intent to share a life together. (Id. at 4.)

Sukhwinder argues that the BIA used an improperly low evidentiary standard for determining marriage fraud. The BIA stated: "In view of the totality of the circumstances, this inference [of marriage fraud] is sufficient to support a finding under section 204(c) of the Act." (Record 3; emphasis added.) Relying on an inference is inadequate because a finding of marriage fraud must be supported by substantial and probative evidence. See Matter of Tawfik, 20 I. & N. Dec. 166, 168 (BIA 1990) ("[A] reasonable inference does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition in accordance with section 204(c) of the Act."); In re Hassim, 2006 WL 3922236, at *1 (BIA Dec. 28, 2006) ("Inadequate evidence and negative inferences do not meet this standard."). Elsewhere, however, the BIA decision correctly stated that a finding of marriage fraud "must be" based on evidence that is "substantial and probative of fraud." (Record 2.) Throughout its decision, the BIA described the evidence as "substantial and probative," and did not rely solely

on inference.  (Id. 2-5.)  This Court therefore concludes that, although the BIA erroneously mentioned an "inference" of marriage fraud, both the BIA decision and the USCIS decision correctly applied the "substantial and probative evidence" standard.

Sukhwinder also contends that the BIA failed to properly weigh four unsworn affidavits submitted by Singh's friends.  However, the BIA noted that the recorded "contains . . . no credible statements from friends . . . ."  (Id. 4.)  The USCIS weighed these "affidavits," mentioning the affiants by name and stating that four individuals attested to "their knowledge of the beneficiary and their knowledge of the marriage of the beneficiary to Doris Singh."  (Id. 58.) The USCIS concluded that the affidavits were not supported by other evidence and were afforded "little probative value."  (Id.)  It concluded that "[t]here is no primary evidence" that Singh and McWilliams shared a life together, and that the affidavits therefore could not be "considered sufficient evidence of the existence of a valid marriage . . . . ."  (Id. 64.)  There is no basis from which to conclude that the BIA and the USCIS failed to properly weigh the four unsworn affidavits.

To the extent that Sukhwinder challenges the BIA's conclusions as arbitrary and capricious, she essentially argues that the BIA should have credited certain statements by Singh and McWilliams and rejected evidence that went toward McWilliams's relationship with Anthony Robinson.  The BIA and USCIS were not arbitrary and capricious in weighing this evidence, and their explanations for their findings did not run counter to the evidence before them.  See generally Egan, 119 F.3d at 107.  This Court further concludes that the decisions of the USCIS and the BIA were supported by substantial evidence.  See generally Koffi, 487 Fed. App'x at 660 ("Given the state of the evidence, a reasonable mind might accept the conclusion that [the beneficiary's] first marriage was entered into for the purpose of evading the

immigration laws.  Thus, the agencies' conclusion to this effect is supported by substantial evidence.").

For the foregoing reasons, the Court concludes as a matter of law that the decisions of the USCIS and the BIA are not arbitrary and capricious, and were supported by substantial evidence.  The defendants' motion for summary judgment is therefore granted, and the plaintiff's motion is denied.

CONCLUSION.

The defendants' motion for summary judgment is granted and the plaintiff's motion is denied.  (Docket # 22, 28.)  The Clerk is directed to terminate the motions and to enter judgment for the defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 23, 2017

- 16 -